THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN J. FALLON, Respondent, v. ROBERT J. WRIGHT, as Commissioner of Correction of the City and County of New York, Appellant.

*Contempt — commissioner of correction of New York — what is a mere evasion of an order requiring him to reinstate in office a warden of the city prison.*

The incumbent of the office of sole warden of the city prison of the city of New York was removed by the commissioner of correction, who appointed his successor, and such successor exercised the functions and powers of sole warden until the court, upon certiorari, made a final order adjudging that the removal of the former incumbent was wrongful, and directing the commissioner "to restore to him the possession of the said office or position and the rights, powers, privileges and emoluments thereof." The commissioner then made an order stating that two wardens were necessary, and continued his new appointee as warden to serve during the day, the period during which all the duties relat-

ing to the administration of the prison were performed, and designated the reinstated warden as "one" of the wardens to serve only at night, thus constituting him practically a mere night watchman.

*Held*, that the commissioner's decision, that a second warden was necessary, was a shallow pretext for disobeying the order of the court, and that an order committing him for contempt was proper.

APPEAL by the defendant, Robert J. Wright, as commissioner of correction of the city and county of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of August, 1897, adjudging the appellant in contempt for disobeying an order of the Appellate Division of the Supreme Court, requiring him to reinstate the relator Fallon in his office or position of warden of the city prison.

Before January, 1896, the relator had been the sole warden of the city prison, occupying apartments therein, exercising all the duties of the office, having the general charge and administration of the prison in the city of New York, called "The Tombs," the care of the prisoners and the command of all persons employed therein as keepers or servants. On January 6, 1896, he was suspended from office, and subsequently was brought to trial before the commissioner of correction on charges of misconduct, was found guilty and removed from his position. Thereupon the commissioner of correction appointed another person warden in the relator's place. A writ of certiorari was obtained by the relator to review the action of the commissioner, and the Appellate Division reversed that action and ordered and commanded the commissioner "to reinstate forthwith the said John J. Fallon (the relator) in the said position or office of warden of the city prison of the city of New York, and to restore to him the possession of the said office or position and the rights, powers, privileges and emoluments thereof." The order of the Appellate Division was affirmed by the Court of Appeals. The commissioner of correction was duly served with the orders requiring the relator's reinstatement, and on the 30th day of October, 1896, sent to the relator a letter in which he stated that, "in accordance with the order and judgment served on me and in compliance therewith, I hereby reinstate you as *one* of the wardens of the city prison with the emoluments thereto appertaining from the date of your removal." On the same

day the commissioner made an order as follows: "The position of night warden of the city prison having been abolished, the services of John E. Van De Carr are to be retained as one of the wardens of the institution — two wardens being necessary, one for day duty and one for night duty," and thereupon he assigned Van De Carr for day duty and Fallon for night duty. All of the duties of the administration of the prison are done in the daytime, and the relator is not allowed to exercise the duties of the position of sole warden from which he was removed, as he had discharged them when he was removed, and the appellant, by dividing the authority, has relegated the relator to the position of a night warden, whose work does not concern the administration of the prison.

*Francis M. Scott*, for the appellant.

*Chas. J. Patterson*, for the respondent.

PATTERSON, J.:

By the order appealed from the appellant was adjudged guilty of contempt in disobeying an order of this court by which he was required forthwith to reinstate the relator, Fallon, in the position or office of warden of the city prison of the city of New York, and "to restore to him the possession of the said office or position and the rights, powers, privileges and emoluments thereof." The proof upon which the court below acted necessitated the conclusion at which it arrived, and any other disposition of the application to punish the appellant would have rendered the administration of justice itself contemptible. The appellant, presumably a man of intelligence, the incumbent of an important official position in the municipal government, willfully and flagrantly disobeyed the command of the court and attempted to evade it upon a shallow pretext, which has not even the merit of plausibility. He was required to reinstate the relator in the position or office from which he had been unlawfully removed, with the rights, powers and privileges pertaining to that position. What those rights, powers and privileges were, were fully understood. The relator had been the sole warden of the city prison; he was in the exclusive exercise of the functions or powers of that office; he was exclusively entitled to the rights and privileges of it as well as exclusively burdened with its responsibili-

ties. It was the imperative command of the court that he should be reinstated so that he would reoccupy the position from which he was removed, precisely as he had occupied it at the time of his removal. Nothing can be plainer or more distinct than the requirement of the order of this court. It does not need interpretation; there is nothing ambiguous; but in as formal and exact terms as language can import, the precise duty required of the appellant was indicated and defined. No act of the appellant can relieve him from the responsibility of obeying the command of the court. If he had interposed obstructions to the enforcement of that command, it was his duty to remove such obstructions, and he cannot take shelter behind the claim that he has himself erected a barrier which prevents him from complying with a positive mandate of the court. By such conduct he merely aggravates his former wrong and evinces a disposition to continue and not to repair it. The alleged reason he assigns for non-compliance with the full order of the court is that he appointed another warden of the city prison, making his appointee a conjoint incumbent of the position with the relator, Fallon. His appointee is the same individual who was appointed sole warden upon the illegal removal of this relator, and who held the position as sole warden until the relator was declared by this court to be entitled to the full reinstatement. When the final order or judgment was served upon the appellant, there was but one acting warden in possession of the office, exercising its powers and enjoying its rights and privileges. As soon as the order of this court became operative, the appellant, instead of at once placing the relator in the position in which the court directed him to be placed, announced that he would be restored to the position of *one* of the wardens, and immediately assigned him to a duty which constituted him nothing more than a night watchman in one of the city prisons. Under the name and title of warden, the appointee of the appellant was continued as warden and invested with the rights and the powers and the enjoyment of the privileges which had pertained originally to the relator and to which it was the instruction of this court that the appellant should restore him. That this was a mere subterfuge to retain the *ad interim* incumbent and to evade the performance of the positive command of this court, is painfully apparent. We do not intend to intimate that if the necessity arose

for having more than one warden of the city prison, it would not be within the competency of the proper authority to appoint an additional warden, but it is too clear for mistake that the retention of the personal appointee of this commissioner under the guise of making him an additional warden, was only for the purpose of retaining him in office through the degradation of the relator who had successfully appealed to the protection of the court. What necessity existed for the appointment of a second warden, and which arose only on the day the final order of this court became operative? All the duties, functions and powers of that office had been executed by a single individual up to the time the order of this court was issued. What necessity arose over night for a change in the situation? It is said that the right to appoint another official is one which resides with the commissioner of correction. Granting that, the question becomes merely one of good faith, and there is nothing in this record to show any other reason, so suddenly arising, requiring an additional warden than a purpose to defeat this relator in his just claim to full restitution to everything of which he had been deprived in connection with the position from which he had been removed unlawfully.

The order appealed from must be affirmed, with costs.

VAN BRUNT, P. J., BARRETT, RUMSEY and WILLIAMS, JJ., concurred.

Order affirmed, with costs.