Larkin, J.
In April, 1942, the Buffalo Municipal Civil Service Commission denied plaintiff, a disabled veteran, a preference in appointment to a position in the Buffalo Police Department. Another having been appointed, Manko instituted a proceeding under article 78 of the Civil Practice Act to secure his preference, oust the incumbent and compel his own appointment. The Special Term denied the application. The order was reversed and the matter remitted for proof (266 App. Div. 708). After a trial on the merits, a final order was granted, allowing the preference and directing the appointment of plaintiff (181 Misc. 143). This order was affirmed (266 App. Div. 1061). Leave to appeal having been denied by the Appellate Division, but granted by the Court of Appeals, there the order was affirmed (293 FT. Y. 669). The record therein discloses neither bad faith nor maliciousness in the denial of this preference, but, on the contrary, that it was denied, solely, on what the courts later determined was a misconstruction by the commission of section 21 of the Civil Service Law, and the commission’s own rule 16, relating to the time when disability must exist, so that the veteran became entitled to preference in a particular appointment. While undoubtedly the general rule is that, in cases of the character of the instant action — once against public officers, only, — their good faith, even a mistake of law, is not a defense to liability (cf. Nuttall v. Simis, 31 App. Div. 503-504, and McGraw v. Gresser, 226 N. Y. 57, 60, with People ex rel. Walker v. Ahearn, 139 App. Div. 88, 93-94, *289 affd. sub nom. People ex rel. Walker v. McAneny, 202 N. Y. 551, and Mullane v. McKenzie, 176 Misc. 752, affd. 263 App. Div. 866, leave to appeal denied, 263 App. Div. 989), still it might he an element which could he considered in a construction of the statute herein involved, as to damages recoverable thereunder, because prior to the waiver by the State in 1929, of its immunity, there would have been no liability for such a judgment as entered herein on the part of the city. The commissioners, personally, would have been obligated to -pay it. A finding that the act of a public official is arbitrary, capricious and illegal is not a finding that it was malicious or done in bad faith. (Matter of Potts v. Kaplan, 264 N. Y. 110, 117.) It may not be amiss to note that, had section 21 of the Civil Service Law read, in 1942, as it does now, since its amendment in 1946, plaintiff could not have been granted a preference as a disabled veteran because his disability had not been allowed on April 14, 1942, when the commission certified the eligible list for appointment to the police commissioner, although the language fixing the time when disability must exist, in present section 21, is substantially the same as it was in 1942.
Plaintiff was appointed to the position on June 25,1944. He was paid the costs of the proceeding. He then brought the instant action based upon section 21 of the Civil Service Law, as it existed prior to 1946. This section, in 1942, when plaintiff’s cause of action arose, after granting to any honorably discharged soldier of the United States disabled in the actual performance of duty in any war, to an extent recognized by the United States Veterans’ Bureau, a preference in appointment or promotion, without regard to his standing on any list from which the appointment or promotion was to be made, in all competitive and noncompetitive positions in the civil service, provided the disability existed at the time of the application for appointment or promotion, then, insofar as material herein, provided as follows: “ A refusal to allow the preference provided for in this and the next succeeding section of any honorably discharged soldier * * * shall be deemed a misdemeanor, and such honorably discharged soldier * * * shall have a right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong. * * * ” (Amd. by L. 1930, ch. 374.) Manko’s complaint pleaded his cause of' action in two counts: 1. for lost salary; 2. for $15,000, the value of his lawyer’s services in the prior proceeding to secure his preference. Defendants were the City of Buffalo and the Civil *290 Service Commissioners. A motion to dismiss the second cause as not pleading a cause of action because counsel fee for the prior proceeding was not a proper element of damage, was denied by the Special Term. That order was reversed in the Appellate Division by- a divided court and the second count dismissed (268 App. Div. 955). On appeal to the Court of Appeals the judgment of this court was reversed on a question of practice and pleading only, expressly reserving the determination of the question of damages (294 1ST. Y. 109). That court held, that since the complaint stated but one cause of action, although pleaded in two counts, the dismissal was improper. The issues were then tried by the court without a jury and decision rendered in favor of plaintiff for $10,000 damages, made up of $5,000 lost salary and $5,000 as the reasonable counsel fee in the prior proceeding. From that part of the judgment entered thereon against the city, alone, which allows counsel fee, the city appeals. Plaintiff, also, appeals, from the same part upon two grounds: 1. that the award was inadequate; 2. that the trial court erred in refusing to consider the expense of further counsel fee of the instant action. The only question necessary to determine, however, is that raised by the appeal of the City of Buffalo. As to plaintiff’s appeal, the conclusion is warranted that the amount awarded was ample, and that the trial court properly refused to consider any legal expense in -connection with the present action as an element of damage.
By chapter 354 of the Laws of 1883 the first legislation in the nature of a civil service statute was enacted. By chapter 410 of the Laws of 1884 this was amended and a preference given to Union veterans of the Civil War for appointment and promotion in the civil service of the State. By chapter 312 of the Laws of 1884 an independent statute was enacted giving to honorably discharged Union soldiers and sailors a similar preference for appointment and employment. During the next ten years both statutes were from time to time' amended, their scope enlarged and the failure to grant the preference made a misdemeanor. Since these statutes placed a duty upon public officers to accord a veteran this preference, concededly the right of the veteran to recover damages from a public officer who failed to do so existed, and had long been recognized. (Adsit v. Brady, 4 Hill 630; Hover v. Barkhoof, 44 N. Y. 113; Willy v, Mulledy, 78 N. Y. 310, 314; Bryant v. Town of Randolph, 133 N. Y. 70, 75; Beardslec v. Dolge, 143 N. Y. 160,165.) Yet it was not until the enactment of chapter 716 of the Laws of 1894, *291 amending chapter 312 of the Laws of 1884, that there was any statutory declaration of such a cause of action for damages. This statute provided, in substance, for a preference in appointment and employment upon all public work to honorably discharged Union soldiers and sailors. It forbade a veteran’s removal except for incompetency and conduct inconsistent with the position held. Then followed this provision: “ and, in case of such removal, or such refusal to allow the preference provided for in this act of and for any such honorably discharged union soldier or sailor, or marine, for partisan, political, personal or other cause, except incompetency, and conduct inconsistent with the position so held, such soldier * * * so wrongfully removed, or refused such preference shall have a right of action in any court of competent jurisdiction for damages as for an act wrongfully done, in addition to the existing right of mandamus; the burden of proving such incompetency and inconsistent conduct, as a question of fact, shall be upon the defendant. * * * ” (Emphasis supplied.) By chapter 821 of the Laws of 1896 this statute was quite materially amended. The same preference to Civil -War veterans in appointment and employment was continued and extended to promotion. The veteran’s removal was limited to incompetency and misconduct shown, after a hearing upon charges made, with a right to review by certiorari. Then followed this provision: “ a refusal to allow the preference provided for in this act to any honorably discharged Union soldier, sailor or marine, or a' reduction of his compensation intended to bring about a resignation, shall be deemed a misdemeanor, and such honorably discharged soldier, sailor or marine shall have a right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong. * * ” (Emphasis supplied.) It is to be noted that the words used in the 1894 statute following the word “ damages ”, namely, “ as for an act wrongfully done ”, were omitted. By chapter 370 of the Laws of 1899 the first Civil Service Law, as such, was enacted. All previous statutes relating to the civil service, and the independent statute, chapter 312 of the Laws of 1884, with the various amendments, were repealed. The preference portion of chapter 821 of the Laws of 1896 was placed in section 20 subsequently renumbered, as now section 21 ,if the Civil Service Law. The preference previously granted to Union veterans of the Civil War was continued in almost the identical language of chapter 821 of the Laws of 1896. The last sentence of section 20, renumbered 21, until 1929, and sub *292 stantially so from 1929 until amended in 1946, read as follows: “ A refusal to allow the preference provided for in this and the next succeeding section to any honorably discharged soldier, sailor or marine or a reduction of his compensation intended to bring about his resignation shall be deemed a misdemeanor, and such honorably discharged soldier * * * shall have a right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong. # * * ” (Emphasis supplied.) By chapter 374 of the Laws of 1930, section 21 was amended to conform to the amendment of the Constitution, effective January 1, 1930, and the preference made applicable to honorably discharged soldiers, sailors, marines or nurses of any war, whose disability was recognized by the United States Veterans’ Bureau as incurred in the actual performance of duty in time of war, and as existing at the time of the application for appointment or promotion. Otherwise the prior language of the section was continued, including that which made a denial of the preference granted by the next succeeding section a misdemeanor, and giving the same right of action for damages as was given in section 21 for a denial of the preference in appointment or promotion. The language of section 21 remained unchanged from then until amended by chapter 521 of the Laws of 1946, enacted to conform to the constitutional amendment effective January 1, 1946.
Those provisions of chapter 821 of the Laws of 1896 restricting the removal of Civil War veterans, except on charges and after a hearing, including the right to mandamus and review by certiorari, were placed in section 21 of the Civil Service Law of 1899, renumbered 22 in 1909. A similar preference as to removal was accorded to Spanish-American War veterans, honorably discharged soldiers, sailors or marines of the regular army and navy of the United States, and to volunteer firemen. This section was quite materially amended and its scope enlarged from time to time. Its only importance, herein, is by reason of the cause of action for damages given by the preceding section 21 up until its amendment in 1946, to any honorably discharged soldier, sailor or marine of the Civil War, and, as amended in 1930, to any honorably discharged soldier, sailor, marine or nurse of the army, navy or marine corps, where the preference, as to removal, given by section 22 to such persons, was violated.
The first constitutional provision in favor of veterans was incorporated into the civil service provision adopted by the Constitutional Convention in 1894, effective January 1, 1895 *293 The record of the convention indicates a sharp divergence of thought as to this preference granted to Civil War veterans without regard to their standing on any civil service list. It continued without change, except as to numbering, until amended in 1929, effective January 1, 1930, limiting the preference to veterans of any war disabled in the actual performance of duty. It was again amended in 3945, effective January 1, 1946, extending the same preference, subject to the disabled veteran’s preference, until December 1, 1950, to all honorably discharged veterans who served in time of war.
Apparently the first case to construe the veteran provision of the statute of 1894 was People ex rel. Broderick v. Morton (24 App. Div. 563). Relator, a Civil War veteran, sought mandamus to compel reinstatement to a position in the State civil service, from which he had been removed contrary to this statute. Therein he asked damages declared to him by the act of 1894. The Appellate Division granted peremptory mandamus but held that, although his damages could be awarded in mandamus, they could not be allowed against the respondents, because they were not the officials who had dismissed relator. On appeal the Court of Appeals (156 N. Y. 136), reversed the granting of mandamus, holding that the writ did not run against the Governor. The question of damages, not being involved, was not discussed.
While O’Hara v. City of New York (28 Misc. 258, affd. 46 App. Div. 518, affd. 167 N. Y. 567) involved chapter 821 of the Laws of 1896, it probably is of little value on the question here presented, because the city was not liable for the tort. Still the trial justice who heard the case refused to allow, as damages, the costs and expenses of the prior mandamus, relying upon Clason v. Nassau Ferry Co. (20 Misc. 315, affd. 27 App. Div. 621).
Fallon v. Wright (82 App. Div. 193) decided in 1903, seems to be the first case where the question of damages under the statute of 1894 was actually involved. Defendant, as Commissioner of Corrections, removed Fallon, a Civil War veteran, warden of the city prison, after a hearing upon stated charges, thus conforming to the statute of 1894. Fallon, by certiorari, reviewed the determination in the Appellate Division, where it was annulled and Fallon’s restoration ordered (7 App. Div. 185, affd. 150 N. Y. 444). Wright then, by subterfuge, sought to evade the mandate directing restoration. Fallon instituted contempt. The Special Term, adjudging him in contempt, imposed a fine of $150, payable to Fallon. This order was *294 affirmed (22 App. Div. 165). Fallon having been restored to office, and having been paid by the city of New York all the salary lost and the costs awarded in both proceedings, then instituted an action under the statute to recover his damages from Wright, personally, claiming as such, $1,400 as legal expenses over the costs of the two prior proceedings. He pleaded that Wright, in preferring the charges upon which his removal was based, was motivated by political reasons. On the trial the testimony warranted finding, not only that fact, but also that the defendant was actuated by racial and religious bigotry. Plaintiff had a verdict of $800. The Appellate Division reversed the judgment in a four to one decision, Justice Laughlin dissenting. The majority opinion held that the counsel fees, incurred in the prior proceedings, were not a proper element of damages. Justice Laughlin, in his dissent, stated that the words “ as for an act wrongfully done ” qualifying the word “ damages ”, in the statute of 1894, instead of language simply awarding an action for damages, warranted the construction that the Legislature intended to treat the action as analogous to malicious prosecution, having in mind that the veteran would first have to resort, either to certiorari or mandamus, before he could sue for damages. It is to be noted that the construction of section 21 of the Civil Service Law, made herein, follows quite closely this dissenting opinion.
Hilton v. Cram (112 App. Div. 35, affd. 190 N. Y. 535) arose under chapter 821 of the Laws of 1896. Hilton, a Civil War veteran, was a transit man in the New York City Department of Docks and Ferries. For some time prior to January 1, 1898, and up to March 11th of that year, he was paid $150 a month. On the last date the commissioners in charge of the department, who apparently had the right to fix his compensation, reduced it to $100 per month. Although in his complaint Hilton alleged that he repeatedly requested defendants to restore his pay to $150, he remained in the employment, accepting his pay monthly at the rate of $100. About December 1, 1901, he brought an action under the statute against the commissioners, personally, alleging that his salary had been reduced for the purpose of bringing about his resignation. Defendants were, seemingly, then out of office because on April 30, 1902, pursuant to a readjustment of salaries in the department, Hilton’s pay was advanced by their successor to $1,500 per year, which Hilton thereafter continued to receive, up until the time of the trial, March, 1905. Defendants’ amended answer pleaded these facts as showing an acquiescence and ratification by plaintiff in the *295 reduction of Ms salary. The answer also pleaded the three-year Statute of Limitations prescribed by subdivision 3 of section 383 of the Code of Civil Procedure. The trial court dismissed the complaint, holding that this limitation applied. The Appellate Division affirmed, but not upon the ground upon which the trial court based the dismissal. In an opinion by Justice Laughlin, in wMch the other four members, three of whom had concurred in the majority opinion in the Fallon case, concurred, after discussing the question of the applicable statute of limitations, stated that it was unnecessary to decide that question because the court had determined that the action for damages accorded by chapter 821 of the Laws of 1896, under which Hilton’s claim, if he had any, arose, was not maintainable because Hilton had not, by mandamus, either annulled the resolution or restored Ms salary to $150. In discussing the question, and purely as dicta, because it was wholly unnecessary to the decision made, and obviously in much more guarded language than found in his dissent in the Fallon case, Justice Laughlin stated that had the plaintiff, by mandamus, caused the restoration of his salary to $150, “ it is quite likely that there would remain damages either in loss of salary * * * , or in costs or expenses of litigation beyond the recovery therein ”. (Emphasis supplied.) The affirmance by the Court of Appeals was without opinion, and by a divided court, three judges dissenting.
Bean v. Clausen (113 App. Div. 129) again presented the question whether a Civil War veteran wrongfully removed could, without invoking mandamus, maintain an action for damages under the statute of 1896. Again, Justice Laughlin wrote. It is significant that in Ms opimon he made no mention of damages, but did state that it was not necessary to determine whether, in all cases, a resort to mandamus was necessary before the action authorized by statute could be brought. Differentiating Bean’s case from the decision in the Hilton case because of peculiar circumstances, a judgment dismissing the complaint was reversed. Justice McLaughlin, who had concurred in the Hilton case, concurred in the reversal but stated frankly that he had reached the conclusion that Hilton v. Cram (112 App. Div. 35, supra) was wrongly decided. However, this decision in Bean v. Clausen (113 App. Div. 129, supra) was handed down just prior to the affirmance by the.Court of Appeals of Hilton v. Cram (190 N. Y. 535, supra).
Burke v. Holtzmann (110 App. Div. 564; 117 App. Div. 292, affd. 196 N. Y. 576) seems to be the only other case where the question of damages under the veteran statute can be said to *296 have been involved. At least no others have been cited, nor has independent research disclosed any. In that case the veteran sued in an action at law under then section 20 of the Civil Service Law for damages without obtaining, through mandamus, his preference in employment. However that point was not raised on either trial, on either appeal to the Appellate Division or in the Court of Appeals. Still a judgment for damages, consisting of compensation lost during the period that preference was wrongfully denied by the defendant’s act, was affirmed. The only significance of this decision is, possibly, as a contemporary view of what was contemplated by the statute, as damages, since no recovery was sought or awarded for anything except lost compensation in the employment. The cause of action arose in 1904, after the decision in Fallon v. Wright (supra) in 1903, but prior to that in Hilton v. Cram (supra) in 1906.
Although, other than in certain exceptional classes of litigation, damages recoverable do not include, as an element, the expenses of prior litigation over the costs awarded therein (Marvin v. Prentice, 94 N. Y. 295; Agostini v. State of New York, 255 App. Div. 264), the trial court construed section 21 of the Civil Service Law, as applied to the circumstances shown herein, as authorizing the recovery by Manko from the Civil Service Commissioners who denied him a preference, and the City of Buffalo, as vicariously responsible for their tort, a recovery which includes plaintiff’s legal expense in the proceeding under article 78 of the Civil Practice Act, on the theory that it was necessary for Manko to secure his preference before he instituted the present action for damages. That construction is based largely upon the trial court’s interpretation of the effect of the two early decisions, Fallon v. Wright (supra) and Hilton v. Cram (supra). That interpretation was that, in the Fallon case the Appellate Division had not then determined that, before resorting to an action for damages the veteran must either procure his reinstatement by certiorari, or the allowance of his preference by mandamus, but that in Hilton v. Cram (supra) such a determination was made for the first time. Implicit in this interpretation is the suggestion that, since three of the justices who concurred in the opinion of Justice Laughlin in the Hilton case, had concurred in the majority opinion in the Fallon case, and since the opinion in the Hilton case may be construed as defining the damages authorized to be recovered in an action under the veteran statute to include counsel fee of a prior litigation to protect the veteran’s rights under the statute, the *297 effect of that occurrence was, in substance, a change of view by these three justices who concurred in the Fallon case, thus warranting a conclusion that the court intended to repudiate its ruling as expressed' in the Fallon decision, and adopt Justice Laughlix’s dissent as the true construction of the statute of 3894, the predecessor of section 21 of the Civil Service Law.
Both the Fallon and Hilton cases presented extreme situations. In the Fallon case the testimony warranted a finding of a willful and malicious tort, which may, possibly, have been a motivating factor for the dissent. Moreover the suggestion that the court in that case had not determined, then, that Fallon was compelled to resort to certiorari before suing for damages, seems to overlook the fact that Fallon was removed on charges strictly in conformity to the 1894 statute. There never was any suggestion that the commissioner did not have the power to remove Fallon, provided the charges preferred were substantiated on the hearing. The proceeding for removal was judicial in character, and so, subject to review by certiorari. (People ex rel. The Mayor v. Nichols, 79 N. Y. 582, 588-589.) Until the determination was annulled it would have barred the action for damages, for it had the effect of a judgment. (34 C. J., Judgments, § 1287; Matter of Hyland v. Waldo, 158 App. Div. 654.) The other justices must have appreciated Fallon’s situation, as Justice Laughlix seemingly did. It was essential to Fallon to rid himself by the only remedy he had, certiorari, of Wright’s findings and decision, if he contemplated suing for damages. Moreover it is extremely doubtful whether, under certiorari, as regulated by the Code of Civil Procedure, in a judgment therein, there could have been any determination of Fallon’s damages. All that could be done upon annulling the determination was to order restitution of what the order had taken away, namely, the position. That was done. It then seems fairly clear that in Fallon v. Wright (82 App. Div. 193, supra) the Appellate Division determined that prior legal expense was not an element of damage in a situation where the prior proceeding was a prerequisite to the action.
The Hilton case, likewise, presented unusual features. While ordinarily a law action is barred by the applicable statute only, still, one may ratify the doing of an act, which otherwise would give rise to a cause of action. Hilton’s conduct in continuing in the employment for nearly four years before making a move to right any wrong which had been done him, receiving his salary during the entire period, monthly, at the reduced rate, might well have been held a ratification. The seeming lack of *298 merit in Hilton’s claim may have been a factor in the determination made in that case by the Appellate Division and Cour t of Appeals, although of course such a conclusion would be mere conjecture. Moreover, to conclude that this decision actually determined, although perhaps such a conclusion is justified by the language of the opinion, that a veteran whose remedy is by mandamus must first resort to that, and thereafter bring an independent action to recover his damages against the offending public officer, again seems to overlook the fact that by section 2088 of the Code of Civil Procedure, and even under the Revised Statutes, a relator could, in mandamus, have his damages assessed. (People v. Supervisors of Richmond County, 28 N. Y. 112; People ex rel. Deverell v. M. M. P. Union, 118 N. Y. 101; People ex rel. Goring v. Wappingers Falls, 151 N. Y. 386; McGraw v. Gresser, 226 N. Y. 57; Matter of Lipsky v. Rice, 152 Misc. 218.) It therefore seems quite reasonable to conclude that the most that can be said for this rather doubtful decision in Hilton v. Cram (supra) is that it held that, by mandamus, if that be the remedy, the veteran’s right must be determined before he could recover damages. It is, at least, doubtful that the court meant that to recover his damages he was compelled to complete the mandamus proceeding first before suing for them. Justice Laughlin in Bean v. Clausen (supra) explained that the application to the veteran statute, in the Hilton case, of the rule that, in an action against a city to recover the salary of a public office, since the.title to it necessarily comes in question, it. could not be tried in such action, as announced in Hadley v. Mayor (33 N. Y. 603) was applied by analogy upon the ground of public policy, that the controlling feature of the Hilton case was the public good, and the difficulty of ascertaining the damages caused by a reduction in salary calculated to bring about a resignation, unless first restored by mandamus, which would limit and fix the damages.
In Thurber v. Duchworth (165 Iowa 685) the Supreme Court of Iowa, construing a statute with almost the identical language of sections 21 and 22 of our Civil Service Law, as they existed from 1899 to 1946, held that both remedies could be applied in the same section. There, the veteran had been removed without a hearing. He was reinstated by mandamus and allowed therein his lost salary.
Nor is the conclusion warranted that, because the other members of the court concurred in the opinion of Justice Laughlin in the Hilton case, thereby, the court intended to overrule the effect of its prior decision in Fallon v. Wright (supra). Since *299 what was said in the Hilton case on costs and expenses of a prior proceeding in mandamus, as an element of damage, was pure dictum, it does not follow that by concurring in that opinion every statement of the writer, although unnecessary to the decision of the question involved, was adopted by the others. (People ex rel. McLaughlin v. Police Comrs., 174 N. Y. 450, 465-466.) Certainly the Court of Appeals did not adopt the opinion.
As bearing upon the question of damages, herein, the statements in People ex rel. Aspinwall v. Supervisors of Richmond County (28 N. Y. 112, 115) and McGraw v. Gresser (226 N. Y. 57, 60) are illuminating, even if dicta, and tend to support the view that counsel fees of the prior proceeding are not an element of damage. The statements so made find support in Joyce on Damages (Vol. 3, § 2089) and in Palmer v. Darby (64 Ohio St. 520) where the Ohio court so construed a statute, allowing damages for wrongful expulsion from office, where, by the statute, one wrongfully excluded from office, after the title had been determined in quo warranto, was given an action for damages.
Prior to 1937 there might have been a question, under the Code of Civil Procedure, and even the Civil Practice Act, whether, in mandamus, a veteran could recover all the lost salary (People ex rel. Walker v. Ahearn, 139 App. Div. 88, 94-95) although no such limitation of damages is indicated in People ex rel. Aspinwall v. Supervisors of Richmond County (supra) and McGraw v. Gresser (supra) nor in People ex rel. Goring v. Wappingers Falls (151 N. Y. 386, supra). This is especially true of McGraw v. Gresser, for that would have been an added reason why the damages had not been waived, because not sought in the prior mandamus. Yet the opinion of the Court of Appeals indicates that the same damages awarded in the action could have been allowed in the prior mandamus. Since article 78 of the Civil Practice Act was enacted in 1937, there can be little question of Manko’s right, in 1942, in his proceeding under that article, to have recovered all the salary which he has recovered herein (Matter of Manko v. City of Buffalo, 181 Misc. 143, 148, citing Matter of McNamara v. Hotting, 257 App. Div. 411, 414), or for that matter, all his damages, whatever they might be, for he had made respondents in that proceeding the commissioners and the City of Buffalo.
From the foregoing it seems reasonably certain that insofar as the construction of the statute, herein, may be founded on the premise that the antecedent proceeding was prerequisite before Manko could resort to an action for damages, it has little *300 support. Fallon v. Wright (supra) has never been expressly overruled by any appellate court. Nothing in the Hilton case can be said to have destroyed the effect of its holding. It was cited with approval, not as a construction of section 21 of the Civil Service Law, but as an authority for the point it decided, as late as Agostini v. State of New York (255 App. Div. 264, 267, supra). The construction of the statute, made in the Fallon case, is fully supported by the two authorities cited in the majority opinion, of which Clason v. Nassau Ferry Co. (20 Misc. 315, affd. 27 App. Div. 621, supra) is one. That case similarly construed section 10, formerly section 29, of the Stock Corporation Law. As to damages, this section 10 is much broader than section 21 of the Civil Service Law. Clason v. Nassau Ferry Co. was quoted with approval by Justice Laughliit in Cuyler Realty Co. v. Teneo Co., Inc. (196 App. Div. 440, 443-444, affd. 233 N. Y. 647, as follows: ‘ ‘ Moreover, the rule is well settled that with respect to statutes imposing liability for damages and contracts, other than those of indemnity, providing for the payment of damages, counsel fees are not recoverable. (Clason v. Nassau Ferry Co., 20 Misc. Rep. 315; affd., 27 App. Div. 621; Rosenberg v. Frankel, 123 id. 700; Crausman v. Graham Const. Co., 95 Misc. Rep. 608. See, also, Mattlage v. N. Y. Elevated R. Co., 17 N. Y. Supp. 536; Hochman V. Bollt, 152 id. 1031.) ”
Another feature militating in.favor of the construction of section 21 of the Civil Service Law, that damages recoverable in the action therein declared in favor of the veteran, do not include counsel fee of a prior proceeding, is that until the present action there seems to have been but two cases on which any attempt has been made to recover such counsel fees, namely, O’Hara v. City of New York (supra), and Fallon v. Wright (supra) in both of which such a recovery was refused. Fallon v. Wright has stood unchallenged, as far as the books disclose, now,- for more than forty years. While that, alone, would not require an adverse decision to plaintiff herein, still the fact that those for whose benefit the statute was enacted have apparently acquiesced, over the years, in the ruling, for concededly, during that period there have been many instances where veterans have been compelled to resort to the courts to enforce their rights under this statute, is, at least, entitled to weight and is of some significance. It is of importance because, since the amendment of the statute of 1894, in 1896, the word “ damages ” has been used without qualification. This word may be said to have always had a technical legal meaning, which normally would not include, as an element, the counsel fees incurred by this *301 plaintiff in the proceeding under article 78 of the Civil Practice Act, nor in the instant action, over and above the costs allowed in each. It must be presumed that the Legislature used the word in its fixed signification, in the absence of express words changing its ordinary interpretation.
Nor is the rule that one who by the tort of another is required, in the protection of his interests, to bring an action against a third person, is entitled to recover from the tort feasor the expense of litigation with such third person, Restatement of Torts (Yol. 4, § 914), applicable to the instant situation. That rule has been, quite uniformly, held within narrow limits. Manho’s proceeding under article 78 of the Civil Practice Act was basically and primarily against the commissioners alone. The incumbent was made a party for the sole purpose of binding him by the primary adjudication, which necessarily also determined the incumbent’s rights. The Commissioner of Police was a party to avoid, in the event the preference was declared, the necessity of compelling a purely ministerial duty on his part. The city was a party on the question of damages only. It was not the litigation with a third party contemplated by the rule.
The reasonable construction of section 21 of the Civil Service Law seems to be that, insofar as it authorizes an action to recover damages, such damages do not include counsel fee for prior litigation to enforce a veteran’s rights under the section, at least where relief, as here, can be had by a proceeding in the nature of mandamus. While it is true that, in some jurisdictions, a violation by a public officer of rights accorded to any civil service employee, gives rise, even without a statute to that effect, to a tort action for damages, which include elements other than lost salary, and that liability attaches therefor though the act of the officer was in good faith and without malice, still no such rule of damages has ever prevailed in this State. Indicative of our own public policy as to damages, is section 23 of the Civil Service Law. Originally enacted in favor of Civil War veterans only, but now extended to all civil service employees, which includes veterans, it has always limited the right of recovery from the governmental unit to the amount of lost salary. Certainly a veteran removed and reinstated by the courts suffers the same loss as a veteran denied a preference in appointment under section 21 of the Civil Service Law. Of added significance is the veto, by the Governor, of a bill passed in 1944, intended to amend section 23, by allowing — in addition to lost salary — costs, counsel fees and expenses paid or incurred by the civil service employee.
*302 Since there is nothing in the language of the statute, nor outside of it, to which attention has been called, warranting a conclusion of an intention to enlarge the rule of damages which may be awarded in an action under the statute here considered, it is clear that, analyzed, the question here presented involves the age old controversy whether costs fully compensate a litigant. Concededly they do not. Yet it has been the public policy of this State, from time immemorial, to regard them as adequate. It has never been the rule, except in limited classes of litigation, to allow, as damages, prior legal expense. If the cause of action authorized by this statute is to become another exception to the usual rule of damages, that should be done, not by the courts, but by the Legislature, the proper branch of government to change the public policy.
For the foregoing reasons the judgment should be modified by eliminating the item of $5,000 allowed as counsel fee, and as so modified, affirmed.
All concur, except Harris, J., who dissents and votes for affirmance. Present — Taylor, P. J., Harris, McCurn, Larkin, and Love, JJ.
Judgment modified on the law in accordance with the opinion and as modified affirmed, without costs of this appeal to any party.